## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Neal Nicol,

                              Plaintiff,

                                                    Civ. No. 05-1290 (RHK/JSM)
v.                                                  **MEMORANDUM OPINION
                                                    AND ORDER**

Auto-Owners Insurance Company
and Heartman Agency, Inc.,

                              Defendants.

---

Thomas C. Baudler, Baudler, Baudler, Maus & Blahnik L.L.P., Austin, Minnesota, for
Plaintiff.

Gerald J. Nielsen and Thomas C. Pennebaker, Nielsen Law Firm L.L.C., Metairie,
Louisiana; Timothy P. Tobin of Gislason & Hunter L.L.P., Hopkins, Minnesota, for
Defendant Auto-Owners Insurance Company.

Daniel J. Heuel, O'Brien & Wolf L.L.P., Rochester, Minnesota, for Defendant Heartman
Agency.

---

## INTRODUCTION

Plaintiff Neal Nicol alleges claims against Defendants Auto-Owners Insurance

Company ("Auto-Owners") and Heartman Agency, Inc. ("Heartman") for breach of contract

and negligence arising from a flood insurance coverage dispute.  This matter comes before

the Court on Heartman's Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(1) or, in the alternative, for Summary Judgment pursuant to Federal Rule of Civil

Procedure 56.  For the reasons set forth below, Heartman's Motion to Dismiss will be

denied, and its Motion for Summary Judgment will be granted in part and denied in part.

## BACKGROUND

Nicol owns a service station and car wash located at 100-11th Avenue Northwest in Austin, Minnesota.  (Nicol Aff. ¶ 1.)  The service station and car wash are housed in two separate buildings on Nicol's property, and each building is a single-floor non-residential structure without a basement.  (Nicol Aff. ¶ 5.)  Nicol has carried flood insurance for his business since November 1998, which has been continuously overseen by insurance agent Gregg Boomgard.  (Nicol Aff. ¶ 1.)  Initially, Boomgard worked for the Redman Insurance Agency and procured insurance for Nicol through the First Community Insurance Company. (Boomgard Aff. Exs. A, B.)  Nicol's original $60,000 policy covered a single-floor non-residential building without a garage.  (Boomgard Aff. Ex. A.)  In 2003, Boomgard's agency was purchased by Defendant Heartman and Nicol's flood insurance policy was transferred to Defendant Auto-Owners.  (Boomgard Aff. ¶ 2.)

In April 2004, the mortgagee of Nicol's property, First Farmers & Merchants State Bank of Austin, asked Nicol to increase the flood insurance coverage limit for his business property to $250,000 because it considered the current policy limit to be inadequate to cover both buildings on the property.  (Nicol Aff. ¶ 2.)  Nicol immediately contacted Boomgard and asked for an increase in his flood insurance coverage limit to $250,000 to cover both the service station and the car wash buildings.  (Id.)  Boomgard increased

Nicol's policy coverage limit to $250,000 through Auto-Owners, effective May 9, 2004.[1]
(Nicol Aff. ¶ 2; Boomgard Aff. Ex. F.)

On September 15, 2004, a flood damaged Nicol's service station and car wash.
(Nicol Aff. ¶ 3.)  Auto-Owners sent its claims adjuster, Gary Schoenmann, to Nicol's
property to inspect the damage and value the loss.  (Id.)  During Schoenmann's inspection,
he questioned whether Nicol's flood insurance policy covered both buildings on the
property.  (Id.)  Nicol immediately contacted Boomgard, who in turn sent an e-mail to
Schoenmann explaining that Nicol's policy covered both the service station building and the
car wash building.  (Nicol Aff. ¶ 4, Ex. A.)  Nonetheless, Schoenmann's damage assessment
only evaluated the damage to the service station building, which was estimated to be
$29,746.25.  (Boomgard Aff. Exs. G, H.)  Nicol then hired the Joseph Company, a licensed
commercial contractor, to submit a bid for repairing the flood-damaged car wash building.
(Nicol Aff. ¶ 3.)  The Joseph Company estimated the damage to the car wash building to be
$194,933.20.  (Id.)  In a letter dated February 15, 2005, Auto-Owners informed Nicol that
his insurance claim would be "closed without payment" because the $29,746.25 in damage
to his property (the service station building only) did not exceed the $50,000 deductible on
his $250,000 flood insurance policy.  (Boomgard Aff. Ex. I.)

On June 27, 2005, Nicol commenced this action against Auto-Owners and Heartman
alleging claims for: (1) breach of contract, (2) reformation of contract, (3) reasonable

---

[1] The new $250,000 insurance policy included a $50,000 deductible.  (Boomgard
Aff. Ex. F.)

3

expectations of the insured, and (4) negligence.  (Compl. ¶¶ 11-27.)  Heartman seeks

dismissal or summary judgment on all claims against it.

## STANDARD OF REVIEW

### I.       Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only those powers

authorized by the Constitution and the statutes enacted by Congress.  Willy v. Coastal

Corp., 503 U.S. 131, 136 (1992).  Under Federal Rule of Civil Procedure 12(b)(1), a party

may move a court to dismiss a federal court action for "lack of jurisdiction over the subject

matter."  Such a motion may challenge the sufficiency of the pleading on its face or the

factual truthfulness of its averments.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993);

Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  "Jurisdictional issues,

whether they involve questions of law or fact, are for the court to decide."  Faibisch v.

University of Minn., 304 F.3d 797, 801 (8th Cir. 2002).  "[T]he trial court is free to weigh

the evidence and satisfy itself as to the existence of its power to hear the case."  Osborn,

918 F.2d at 730.  The plaintiff bears the burden of proving that jurisdiction does in fact

exist.  Id.

### II.      Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  For

the purposes of summary judgment, a disputed fact is "material" if its resolution will

determine the outcome of the case, and a dispute is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty

Lobby Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp,

475 U.S. 574, 586-87 (1986).  The moving party carries the burden of showing that there is

no genuine issue of material fact, and all evidence and reasonable inferences must be

viewed in a light most favorable to the non-moving party.  Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986).

## ANALYSIS

**I.      Heartman's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Heartman seeks dismissal of Nicol's claims pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction.  In the Complaint, Nicol asserts

that this Court has exclusive jurisdiction over the case "under the National Flood Insurance

Act, 42 U.S.C. § 4053 and 42 U.S.C. § 4072."  (Compl. ¶ 1.)  Heartman argues that the

National Flood Insurance Act does "not authorize or provide for actions against insurance

agents who may have provided services in placing the flood insurance with an insurer."

(Mem. in Supp. at 5.)

The National Flood Insurance Program ("NFIP") is a federally supervised and

guaranteed insurance program presently administered by the Federal Emergency

Management Agency ("FEMA") pursuant to the National Flood Insurance Act ("NFIA").

See 44 C.F.R. §§ 59.1-77.2.  Congress created the NFIP to: (1) limit the damage caused by

flood disasters through prevention and protective measures, (2) spread the risk of flood

damage among private insurers and the federal government, and (3) make flood insurance

"available on reasonable terms and conditions."  See 42 U.S.C. § 4001(a).  In 1983,

pursuant to regulatory authority granted by Congress in 42 U.S.C. § 4081(a), FEMA created

the "Write Your Own" ("WYO") Program, in which the federal government underwrites

flood insurance policies created and distributed by private insurance companies.  See 44

C.F.R. §§ 62.23-.24.  Insurance companies participating in the WYO flood insurance

program are fiscal agents of the United States.  42 U.S.C. § 4071(a)(1).  Pursuant to §

4072, federal district courts have original exclusive jurisdiction over cases involving

claims arising from the WYO program:

> In the event the program is carried out as provided in section 4071 of this
> title, the Director shall be authorized to adjust and make payment of any
> claims for proved and approved losses covered by flood insurance, and upon
> the disallowance by the Director of any such claim, or upon the refusal of the
> claimant to accept the amount allowed upon any such claim, the claimant,
> within one year after the date of mailing of notice of disallowance or partial
> disallowance by the Director, may institute an action against the Director on
> such claim in the United States district court for the district in which the
> insured property or the major part thereof shall have been situated, and
> original exclusive jurisdiction is hereby conferred upon such court to hear
> and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072.  Although WYO-participating insurance companies are individually

responsible for defending against such claims, FEMA reimburses the companies for

defense costs.  44 C.F.R. § 62.23(i)(6).

Heartman argues that while § 4072 gives exclusive federal jurisdiction over NFIP

claims alleged directly against the Director of FEMA, nothing gives this Court jurisdiction

over NFIP claims against insurance agencies.  (Mem. in Supp. at 4-6.)  Although the Eighth

Circuit has not addressed this precise jurisdictional issue,[2] both Heartman and Nicol rely

on Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161 (3rd Cir. 1998), as support for their

assertion that this Court has jurisdiction over Nicol's claims against Auto-Owners.  (Mem.

in Supp. at 6; Mem. in Opp'n at 4-5.)  In Van Holt, homeowners brought suit against their

insurance company for flood damage to property insured under the NFIP.  163 F.3d at 161.

The defendant insurance carrier argued that the plain text of § 4072 restricted the reach of

federal jurisdiction to lawsuits directly against FEMA.  163 F.3d at 166.  The Third Circuit

disagreed and determined that "a suit against a WYO company is the functional equivalent

of a suit against FEMA."  Van Holt, 163 F.3d at 166.  Accordingly, it held that § 4072

vested the district court with subject matter jurisdiction over the plaintiffs' lawsuit against

their insurance company.[3]  Van Holt, 163 F.3d 167.

---

[2] In its brief, Heartman does cite Nelson v. Becton, 929 F.2d 1287 (8th Cir. 1991), as an example of an Eighth Circuit case which involves a NFIP claim.  In Nelson, homeowners brought suit against the Director of FEMA to recover for flood damage to property covered by policies issued pursuant to the NFIP.  929 F.2d at 1287.  The question of subject matter jurisdiction pursuant to § 4072 was not at issue or discussed by the Eighth Circuit because the action was commenced solely against the Director of FEMA, which is expressly authorized by § 4072.  Therefore, the procedural posture of Nelson is inapposite.

[3] The holding in Van Holt was followed by the Sixth Circuit in Gibson v. America Bankers Ins. Co., 289 F.3d 943 (6th Cir. 2002) (finding that § 4072 gives exclusive federal jurisdiction over WYO insurance companies with claims involving the NFIP).  In Downey v. State Farm Fire & Cas. Co., 266 F.3d 675 (7th Cir. 2001), the Seventh Circuit rejected the holding in Van Holt — that § 4072 gives federal district courts subject matter jurisdiction over any party other than FEMA — but determined that federal question jurisdiction exists in all cases against WYO-participating insurance companies "because the NFIP is a federal program," and "uniform judicial interpretations are necessary."  Downey, 266 F.3d at 680.

The posture of the present case is similar to that of <u>Van Holt</u>.  Like the plaintiff in

<u>Van Holt</u>, Nicol has alleged claims against Auto-Owners, his WYO-participating insurance

company, arising from flood damage to property insured pursuant to the NFIP.  (Compl. ¶¶

8, 11-15.)  This Court finds <u>Van Holt</u> persuasive in its conclusion that "a suit against a

WYO company [like Auto-Owners] is the functional equivalent of a suit against FEMA,"

and concludes that it has subject matter jurisdiction over Nicol's claims against Auto-

Owners.

The question remains, however, whether the Court has jurisdiction over Nicol's

claims against Heartman.  <u>Van Holt</u> did not address the issue of federal jurisdiction over

insurance agencies such as Heartman, which procure flood insurance through a WYO-

participating insurance companies.  However, the Fifth Circuit addressed this issue in <u>Smith</u>

<u>v. Nat'l Flood Ins. Program and Martin</u>, 796 F.2d 90 (5th Cir. 1986).  In <u>Smith</u>,

homeowners sued FEMA and their insurance agent for claims involving flood-damaged

property covered by a policy issued pursuant to the NFIP.  796 F.2d at 91.  The Fifth Circuit

concluded that the district court had exclusive jurisdiction over plaintiff's claims against

FEMA pursuant to § 4072, and affirmed the district court's decision to extend

supplemental jurisdiction over the plaintiffs' negligence claim against their insurance

agent.  <u>Smith</u>, 796 F.2d at 92-93.  It reasoned that § 4072 does not "expressly negate the

possibility of pendent parties" involved in causes of action under the NFIP, and "exclusive

federal jurisdiction over claims against the [WYO] Program and the considerations of

judicial economy and convenience provide appropriate support" for supplemental

jurisdiction.  Smith, 796 F.2d at 92.

Like Smith, this case involves claims by Nicol against Heartman, his insurance

agent, arising from flood damage to property insured by a policy issued pursuant to the

NFIP.  The Court adopts the rationale of Smith and its conclusion that considerations of

judicial economy and convenience provide appropriate support for supplemental

jurisdiction in this type of case.  The claims against Heartman arise from the same nucleus

of operative facts as the claims against Auto-Owners, which all stem from the flood in

September 2004 that damaged the buildings on Nicol's business property.  (Compl. ¶ 8;

Nicol Aff. ¶ 3.)  Based on the rationale of Smith and 28 U.S.C. § 1367(a), this Court

determines that it has supplemental jurisdiction over Nicol's claims against Heartman.

Accordingly, Heartmans' Motion to Dismiss for Lack of Subject Matter Jurisdiction will

be denied.[4]

## II.     Heartman's Motion for Summary Judgment

-----------------------

[4] Heartman also seeks to dismiss Nicol's claims under Federal Rule of Civil
Procedure 12(b)(6) for failure to state a claim.  However, Rule 12(b)(6) provides that if
"matters outside the pleading are presented to and not excluded by the court, the motion
shall be treated as one for summary judgment and disposed of as provided in Rule 56."
"Matters outside the pleading" do not include "matters of public record, materials that do
not contradict the complaint, as well as materials that are necessarily embraced by the
pleadings."  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  In
this case, both parties have submitted affidavits and other materials that are outside the
pleadings.  Because the Court has taken these materials into consideration, the second part
of Heartman's Motion will be analyzed under Rule 56 rather than Rule 12(b)(6).  See e.g.,
Boone v. PCL Constr. Services, Inc., No. CV-05-24, 2005 WL 1843354 (D. Minn Aug. 2,
2005).

Heartman alternatively seeks summary judgment on all of Nicol's claims:  (1) breach of contract, (2) reformation of contract, (3) reasonable expectations of an insured, and (4) negligence.  (Compl. ¶¶ 11-27.)  The Court will address each in turn.

## A.    Contract claims

Nicol alleges claims against Heartman for breach of contract and reformation of contract.  As a basis for the breach of contract claim, Nicol alleges that he "asked Heartman to obtain and Heartman agreed to obtain a standard flood insurance policy with Auto-Owners that covered both the service station building and the car wash building," and "Heartman breached its contract with Nicol when it failed to obtain a flood insurance policy from Auto-Owners that covered both buildings."  (Compl. ¶¶ 17-18.)  In asserting a claim for reformation of contract, Nicol alleges that he "relied on the expertise of [Heartman], acting as an agent for Auto-Owners, for the purpose of writing the policy, and that the policy would cover both the service station and the car wash; Plaintiff would not have signed the insurance agreement and paid the increased premium on the policy if Plaintiff had known that the policy did not provide coverage for both the service station and the car wash."  (Compl. ¶ 21.)

The NFIP regulations include a Standard Flood Insurance Policy ("SFIP"), which contains standard language for private insurers to use when issuing flood insurance policies to individuals.  <u>See</u> 41 C.F.R. § 61 app. A(2).  The SFIP defines a "policy" as:

The entire written contract between you and us.  It includes:

a.        This printed form;

      b.     The application and Declarations page;

      c.     Any endorsement(s) that may be issued; and

      d.     Any renewal certificate indicating that coverage has been
instituted for a new policy and new policy term.

Only one building, which you specifically described in the application, may
be insured under this policy.

41 C.F.R. § 61 app. A(2)(II)(20). When analyzing an insurance policy created pursuant to

the NFIP, federal common law controls. Nelson, 929 F.2d at 1290. If the policy language

is clear and unambiguous, its natural meaning controls. Sodowski v. Nat'l Flood Ins.

Program, 834 F.2d 653, 655 (7th Cir. 1987).

Heartman argues that the "essence" of Nicol's contract claims is a dispute over

insurance coverage, and summary judgment is appropriate on such claims because "as a

matter of law, the policy issued by Auto-Owners to the Plaintiff complies with the [SFIP] at

Appendix A(2) of the Code of Regulations." (Mem. in Supp. at 7.) Nicol counters that

genuine issues of material fact exist concerning the ambiguous language in the insurance

policy and Boomgard's statements to Nicol when the policy limit was increased to

$250,000 in May 2004. (Mem. in Opp'n at 8.)

The Court agrees with Nicol and concludes that genuine issues of material fact exist

concerning the interpretation of Nicol's flood insurance policy. First, the Declarations

Page for Nicol's flood insurance policy is ambiguous. The document declares a $250,000

policy limit for the "insured property address" at "100 11th Ave NW Austin, MN 55912-

2914," and within the property description, the heading "building" is followed by the

description of a "one floor with no basement, non-residential small business, non-elevated

building." (Boomgard Aff. Ex. F; Nicol Aff. Ex. B.) Furthermore, Nicol's flood insurance

policy Application indicates that the insured building does not have an attached garage.

(Nicol Aff. Ex. C.) The service station building on Nicol's property has an attached garage,

while the car wash building does not. (Nicol Aff. ¶ 5.) While it is true that Nicol's flood

insurance policy contains the SFIP language that "only one building, which you specifically

described in the application, may be insured under this policy," the building description in

Nicol's flood insurance application could apply to either the service station building or the

car wash building. This ambiguity in Nicol's flood insurance policy creates a genuine issue

of material fact regarding the resolution of Nicol's contract claims against Heartman.

Second, the e-mail sent by Boomgard to Schoenmann on October 18, 2004, further

clouds the issue:

> Neal Nicol owns two bldgs at the 100 11th Ave NW location. A service
> station and an automatic car wash which is approximately 10 feet from the
> station. Same address, same construction, etc. His Bank recently requested
> increased limits on the bldgs. They felt he should have a $250,000 limit
> covering both structures. So Linda my CSR increased the limit accordingly.
> In doing so, the app did not ask for different bldg descriptions . . . it just
> asked for a limit per address. Therefore, the 250,000 represents the amount
> of insurance on both bldgs. Hope this clears up any confusion.

(Nicol Aff. Ex. A.) The e-mail contains several important statements regarding material

facts involved in Nicol's contract claims. Boomgard admits that he had a conversation with

Nicol regarding the $250,000 increase to the flood insurance policy, and acknowledges

that Nicol's bank requested flood insurance "covering both structures" on the mortgaged

property. (Nicol Aff. Ex. A.) Boomgard's e-mail indicates that there is some ambiguity in

the insurance policy application by noting that the "application did not ask for different

building descriptions, it just asked for a limit per address." (Nicol Aff. Ex. A.) Most

importantly, Boomgard clearly states that "$250,000 represents the amount of insurance on

both [buildings]." (Nicol Aff. Ex. A.) These statements in Boomgard's e-mail create

further genuine issues of material fact regarding the resolution of Nicol's contract claims.

Accordingly, Heartman's Motion seeking summary judgment on Nicol's contract claims

will be denied.

### B.      Reasonable Expectations of the Insured

Nicol also alleges that he "had a reasonable expectation that the car wash was

insured under the Policy, and thus the 'doctrine of reasonable expectations' should be

applied to provide coverage for [his] car wash." (Compl. ¶¶ 22-23.) Heartman argues that

Nicol's claim should be dismissed as a matter of law because the doctrine of reasonable

expectations has not been adopted into federal common law, which governs the

interpretation of Nicol's flood insurance policy. (Mem. in Supp. at 9.)

The doctrine of reasonable expectations is a state common law doctrine which

allows a court, under certain limited circumstances, to disregard the plain language of an

insurance policy in order to protect the insured's objectively reasonable expectation of

coverage. See Robert Keeton, Insurance Law Rights at Variance with Policy Provisions, 83

Harv. L. Rev. 961, 967 (1970). While many state courts have adopted it, the Eighth Circuit

has expressly refused to incorporate the doctrine of reasonable expectations as part of

federal common law. Nelson, 929 F.2d at 1291. In Nelson, the Eighth Circuit noted the

13

"federal programs that by their nature are and must be uniform in character throughout the Nation necessitate formulation of controlling federal rules rather than incorporating state law . . . as the federal rule of decision." Id. (citing United States v. Kimbell Foods, Inc., 440 U.S. 715, 728 (1979).  Pursuant to the Eighth Circuit's decision in Nelson, the Court determines that Nicol's claim alleged under the doctrine of reasonable expectations must be dismissed, and summary judgment on that claim will be granted.

### C.      Negligence

Nicol's final claim against Heartman is for negligence.  Specifically, Nicol alleges that he "asked Heartman to obtain and Heartman agreed to obtain a standard flood insurance policy with Auto-Owners that covered both the service station building and the car wash building," and "Heartman was negligent in that it failed to obtain a flood insurance policy from Auto-Owners covering both buildings and did not advise Nicol of such failure." (Compl. ¶¶ 25-26.)  Heartman argues that because it properly obtained a flood insurance policy and had no duty to go over the details of the policy with Nicol, summary judgment is appropriate.  (Mem. in Supp. at 4.)

When an insurance broker agrees to obtain insurance for a client, the broker owes a duty to the client to act with reasonable care, skill, and diligence.  Bell v. O'Leary, 744 F.2d 1370, 1372 (8th Cir. 1984).  In Bell, homeowners sued their insurance agent after discovering that their flood insurance policy issued pursuant to the NFIP was void under restrictions in the federal regulations.  744 F.2d at 1371.  In affirming the district court's grant of summary judgment to the homeowners on their negligence claim against the

14

insurance agent, the Eighth Circuit noted that because the agent "held himself out to the public as one who had superior knowledge" in the insurance industry, the agent was "charged with the ability to do more than simply fill out application forms." Bell, 744 F.2d at 1373. The Eighth Circuit specifically declared that "by accepting the task of obtaining insurance for [the homeowners], [the insurance agent] expressly relieved the plaintiffs" of any responsibility of obtaining related information. Bell, 744 F.2d at 1373.

The Court concludes that Nicol has properly alleged a negligence claim against Heartman and genuine issues of material fact exist regarding whether Heartman acted negligently under the circumstances. Like Bell, Boomgard owed Nicol a duty to act with reasonable care, skill, and diligence in procuring and maintaining Nicol's flood insurance. 744 F.2d at 1372. Nicol worked continuously with Boomgard over a six-year period and was very familiar with Nicol's business. (Nicol Aff. ¶ 1.) In April 2004, Nicol asked Boomgard to increase his flood insurance policy limit to $250,000 to cover both the service station and car wash buildings. (Nicol Aff. ¶ 2.) Boomgard admits that he changed the policy limit to $250,000 based on Nicol's request, and acknowledges that Nicol's request was at the urging of the mortgagee of Nicol's property. (Boomgard ¶ 7.) The October 18, 2004, e-mail from Boomgard to Schoenmann raises a genuine issue of material fact regarding whether Boomgard thought that he had changed Nicol's flood insurance policy to cover both the car wash and service station buildings. (See Nicol Aff. Ex. A.) Because genuine issues of material fact exist concerning whether Boomgard knew that Nicol wanted the policy to cover both buildings on the property and negligently failed

to expand the coverage or inform Nicol that such coverage was not possible, summary

judgment on Nicol's negligence claim will be denied.

**CONCLUSION**

Based on the foregoing, and all of the files, records and proceedings herein, it is

**ORDERED** that:

1.      Heartman's Motion to Dismiss (Doc. No. 17) is **DENIED**; and

2.      Heartman's Motion for Summary Judgment (Doc. No. 4) is **DENIED** with

respect to Counts I, II, III, and V in the Complaint (Doc. No. 1) but

**GRANTED** with respect to Count IV in the Complaint, and Count IV is

**DISMISSED WITH PREJUDICE**.


Dated: March 8, 2006                                    s/Richard H. Kyle
                                                        RICHARD H. KYLE
                                                        United States District Judge